James C. Shah
MILLER SHAH LLP
155 Montgomery Street, Suite 600
San Francisco, CA 94104
Telephone: (866) 540-5505
Facsimile: (866) 3007367
Email: jcshah@millershah.com

*Attorneys for Plaintiffs, the Plan,*
 *and the Settlement Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Sutter Health ERISA Litigation* | Case No. 1:20-cv-01007-LHR-BAM |
| | **PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF CLASS NOTICE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Amended Consolidated Complaint filed: November 11, 2020 |

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........................................................................ 1

MEMORANDUM OF POINT AND AUTHORITIES ................................................ 4

I.    INTRODUCTION ............................................................................................ 4

II.   BACKGROUND .............................................................................................. 4

III.  THE PROPOSED SETTLEMENT................................................................... 6

    A.    Class Definition ...................................................................................... 6

    B.    Released Claims ...................................................................................... 6

    C.    Class Relief ............................................................................................. 7

        1.    Settlement Fund ........................................................................... 7

        2.    Distribution of Settlement Funds to Class Members ................. 8

        3.    Payment of Case Contribution Awards ...................................... 8

        4.    Payment of Attorneys' Fees, Costs, and Expenses ................... 8

        5.    Any Uncashed Checks will Be Distributed to the Settlement Fund ......... 9

    D.    Approval of Settlement Terms by Independent Fiduciary .................... 10

    E.    Settlement Administration ..................................................................... 10

    F.    Dissemination of Notice to the Class .................................................... 11

    G.    Opportunity to Object ............................................................................ 12

IV. ARGUMENT ..................................................................................................... 12

    A.    The Court Will Be Able to Certify the Class for Purposes of Settlement ........... 13

        1.    The Settlement Class Satisfies Rule 23(a) ................................. 13

            a.    Numerosity ...................................................................... 13

            b.    Commonality..................................................................... 14

            c.    Typicality ......................................................................... 16

            d.    Adequacy .......................................................................... 17

        2.    The Settlement Class Satisfies Rule 23(b)(1) ........................... 19

        3.    Miller Shah and Capozzi Adler Should Be Appointed as Class Counsel . 19

B.      The Settlement, Notice Plan, and Plan of Allocation Warrant Preliminary Approval ........................................................................................... 20

1.      The Settlement Should be Preliminarily Approved ................................. 20

2.      The Notice Plan Should be Preliminarily Approved ................................ 23

3.      The Plan of Allocation Should be Preliminarily Approved .................... 24

V.      CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Achziger v. IDS Prop. Cas. Ins. Co.*,
   772 F. App'x 416 (9th Cir. 2019) ............................................................. 16

*Aguilar v. Melkonian Enterprises, Inc.*,
   2007 WL 201180 (E.D. Cal. Jan. 24, 2007) ........................................... 15, 16, 18, 19

*Alberto v. GMRI, Inc.*,
   252 F.R.D. 652 (E.D. Cal. 2008) ............................................................. 13, 14

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................. 12, 13, 19

*Bailey v. Verso Corp.*,
   337 F.R.D. 500 (S.D. Ohio 2021) ........................................................... 18

*Beach v. JPMorgan Chase Bank, N.A.*,
   2019 WL 2428631 (S.D.N.Y. June 11, 2019) ......................................... 18

*Blackmon v. Zachary Holdings, Inc.*,
   2022 WL 2866411 (W.D. Tex. July 21, 2022) ......................................... 10

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) ................................................................. 20

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................... 23

*Clark v. Duke Univ.*,
   2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) ....................................... 15, 16, 17, 19

*Cunningham v. Cornell Univ.*,
   2019 WL 275827 (S.D.N.Y Jan. 22, 2019) ............................................. 15, 16

*Does I v. Gap, Inc.*,
   2002 WL 1000073 (D.N. Mar. Is. May 10, 2002) ................................... 22

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................................. 23

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) ................................................................. 15

*Foster v. Adams & Assocs., Inc.*,
  2019 WL 4305538 (N.D. Cal. Sept. 11, 2019) .................................................... 14, 19

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982) .......................................................................................... 14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................................ 12, 21

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir.1992) ............................................................................ 16

*Harris v. Palm Springs Alpine Estates, Inc.*,
  329 F.2d 909 (9th Cir. 1964) ........................................................................... 14

*In re First Am. Corp. ERISA Litig.*,
  263 F.R.D. 549 (C.D. Cal. 2009) ..................................................................... 16

*In re Nexus 6P Prods. Liab. Litig.*,
  2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) .............................................. 24

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ....................................................................... 20, 21

*In re Tableware Antitrust Litig.*,
  484 F.Supp.2d 1078 (N.D.Cal. 2007) ............................................................ 21

*Jones v. Coca-Cola Consolidated, Inc.*,
  2022 WL 703605 (W.D.N.C. Mar. 8, 2022)................................................... 10

*Kabasele v. Ulta Salon, Cosms. & Fragrance, Inc.*,
  2023 WL 2918679 (E.D. Cal. Apr. 12, 2023)............................................... 13, 20

*Kanawi v. Bechtel Corp.*,
  254 F.R.D. 102 ................................................................................................ 16, 18, 19

*Karpik v. Huntington Bancshares Inc.*,
  2021 WL 757123 (S.D. Ohio Feb. 18, 2021)................................................. 19, 24

*Kelly v. Johns Hopkins Univ.*,
  2020 WL 4334473 (D. Md. Jan. 28, 2020) .................................................... 9

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
  323 F.R.D. 145 (S.D.N.Y. 2017) .................................................................... 18

*Lounibos v. Keypoint Gov't Solutions Inc.*,
   2014 WL 558675 (N.D. Cal. Feb. 10, 2014) ................................................................ 22

*Lozano v. AT & T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ................................................................................ 16

*Massachusetts Mutual Life Insurance Co. v. Russell*,
   473 U.S 134 n.9 (1985) ........................................................................................ 17

*Mathein v. Pier 1 Imports (U.S.), Inc.*,
   2017 WL 6344447 (E.D. Cal. Dec. 12, 2017) ...................................................... 22

*Mondrian v. Trius Trucking, Inc*.,
   2022 WL 2306963 (E.D. Cal. June 27, 2022) ...................................................... 12

*Monterrubio v. Best Buy Stores, L.P.*,
   291 F.R.D. 443 (E.D. Cal. 2013) ......................................................................... 21

*Moreno v. Deutsche Bank Ams. Holding Corp*,
   2017 WL 3868803 (Sept. 5, 2017)....................................................................... 18

*Mullane v. Central Hanover Bank and Trust Co*.,
   339 U.S. 306 (1950)............................................................................................. 23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................... 13, 22

*Ogbuehi v. Comcast of California/Colorado/Fla./Oregon, Inc.*,
   303 F.R.D. 337 (E.D. Cal. 2014) ......................................................................... 14

*Ontiveros v. Zamora*,
   2014 WL 3057506 (E.D. Cal. July 7, 2014) ................................................... 17, 21

*Ortiz v. Fireboard Corp*.,
   527 U.S. 815 (1999)............................................................................................. 19

*Peters v. Nat'l R.R. Passenger Corp*.,
   966 F.2d 1483 (D.C. Cir. 1992)........................................................................... 23

*Razo v. AT&T Mobility Servs., LLC*,
   2023 WL 3093845 (E.D. Cal. Apr. 26, 2023)...................................................... 24

*Rodriguez v. Danell Custom Harvesting, LLC*,
   327 F.R.D. 375 (E.D. Cal. 2018) .................................................................... 21, 22

*Sacerdote v. New York Univ.*,
    2018 WL 840364 (S.D.N.Y. Feb. 13, 2018)..........................................................16, 18

*Shirk v. Fifth Third Bancorp*,
    2008 WL 4425535 (S.D. Ohio Sept. 30, 2008) ..........................................................19

*Singh v. Roadrunner Intermodal Servs., LLC*,
    2018 WL 2412325 (E.D. Cal. May 29, 2018) ..........................................................22

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ....................................................................13, 20

*Surowitz v. Hilton Hotels Corp.*,
    383 U.S. 363 (1966)........................................................................................18

*Tatum v. R.J. Reynolds Tobacco Co.*,
    254 F.R.D. 59 (M.D.N.C. 2008) ..............................................................................16

*Turk v. Gale/Triangle, Inc.*,
    2017 WL 4181088 (E.D. Cal. Sept. 21, 2017)..............................................................22

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..............................................................................14, 15, 17

*West v. Circle K Stores, Inc.*,
    2006 WL 8458679 (E.D. Cal. Oct. 20, 2006) ..............................................................22

*West v. Continental Automotive, Inc.*,
    2017 WL 2470633 (W.D.N.C. June 7, 2017) ..............................................................18

**Statutes**

28 U.S.C. § 1715....................................................................................................12

29 U.S.C. § 1001....................................................................................................4

29 U.S.C. § 1104....................................................................................................15

29 U.S.C. § 1104(a)(1)..........................................................................................15

29 U.S.C. §§ 1109(a), 1132(a)(2) ........................................................................17

29 U.S.C. §§ 1109, 1132(a)(2)..............................................................................15

**<u>Rules</u>**

Federal Rule of Civil Procedure 23 ........................................................................ passim
Federal Rule of Civil Procedure 41(a)(1)(A)(ii) ............................................................ vii

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that Plaintiffs, Christina Bonicarlo, Nicole Garcia, Adam Blackburn, and Tabitha Hoglund (collectively, "Plaintiffs"), on behalf of the proposed Settlement Class and the Sutter Health 403(b) Savings Plan (the "Plan"), hereby move (the "Motion"), before this Honorable Court and pursuant to Federal Rule of Civil Procedure 23, for entry of an Order that: (1) preliminarily approves the Settlement Agreement with Defendant, Sutter Health[1] ("Defendant" and with Plaintiffs, the "Parties");[2] (2) preliminarily certifies the proposed Settlement Class; (3) approves the proposed notice plan ("Notice Plan") in the Settlement Agreement and proposed Preliminary Approval Order; and (4) sets a final approval hearing on a date convenient for the Court at least 140 calendar days after the entry of a preliminary approval order.  A proposed Preliminary Approval Order is attached as Exhibit C to the Settlement Agreement.

The proposed Settlement Class is defined as follows:

All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period.

Excluded from the Settlement Class are Defendant, the Defined Contribution Oversight Committee, the Board of Directors of Sutter Health (the "Board"), the individual members of the Defined Contribution Oversight Committee and the Board and their Beneficiaries

Plaintiffs propose the following schedule associated with the Notice Plan and Fairness Hearing:

//

//

---

[1] On June 16, 2023, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), Plaintiffs agreed to voluntarily dismiss the Sutter Health 403(b) Savings Plan Committee as a defendant in the Action, as well as to forego naming the individual members of the Committees and other potential fiduciaries as defendants, in exchange for Sutter's agreement to satisfy any judgment arising out of the conduct of such parties.

[2] The Settlement Agreement and its exhibits are attached to the accompanying Declaration of Alec J. Berin ("Berin Decl.").  Terms not defined herein shall have the same meaning as in the Settlement Agreement.

| Event | Reference to Preliminary Approval Order | Proposed Deadline |
|---|---|---|
| Preliminary approval hearing | | If the Court deems necessary, on a date convenient for the Court. |
| Settlement Administrator to set up settlement website and toll-free number | ¶ 8 | Within 30 days of entry of Preliminary Approval Order |
| Send Settlement Notice and Former Participant Claim Form to Class Members | ¶ 8 | Within 30 days of entry of Preliminary Approval Order |
| Final approval motion and applications for attorneys' fees, expenses, and case contribution awards | ¶ 9 | 45 days before Fairness Hearing |
| Independent Fiduciary report | Settlement Agreement, § 2.1 | Not later than 35 days before the Fairness Hearing |
| Deadline for filing of objections | ¶ 11 | Not later than 30 days before the Fairness Hearing |
| Deadline for Parties to respond to objections or file any additional papers in support of Settlement | ¶ 11 | Not later than 7 days before Fairness Hearing |
| Fairness Hearing | ¶ 6 | On a date convenient for the Court no sooner than 140 days after the date the Preliminary Approval Order is entered |

The Motion is based on this Notice of Motion, the incorporated memorandum of points and authorities, the supporting Declaration of Alec J. Berin and all supporting papers, as well as the record in this litigation, and any other matters the Court may consider.  Plaintiffs respectfully submit that the proposed settlement memorialized in the Settlement Agreement (the "Settlement") is fair, reasonable, and adequate, and should be preliminarily approved so that notice can be provided to the Settlement Class.

The Settlement is the product of arm's-length negotiations between the Parties and their counsel, all of whom comprehensively litigated this matter, are well-informed regarding all the issues in this litigation, and have significant experience in complex litigation of this type. Accordingly, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order and, if the Court deems necessary, hold a preliminary approval hearing on a date convenient

1  for the Court.

2         Defendant does not oppose the relief sought herein or preliminary approval of the Settlement.

3  However, Defendant specifically denies any liability or wrongdoing and the veracity of the

4  allegations in the Complaint and states that it is entering into this Settlement Agreement to eliminate

5  the burden and expense of further litigation.

6         THEREFORE, Plaintiffs, on behalf of the proposed Settlement Class and the Plan, move

7  before this Honorable Court pursuant to Federal Rule of Civil Procedure 23, for entry of an Order

8  as described above.

9  Dated: March 14, 2025                              Respectfully submitted,

10                                                    /s/ *James C. Shah*

11                                                    James C. Shah
                                                      MILLER SHAH LLP
12                                                    456 Montgomery Street, Suite 1900
                                                      San Francisco, CA 94104
13                                                    Telephone: (866) 540-5505
                                                      Facsimile: (866) 3007367
14                                                    Email: jcshah@millershah.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28  PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
    1:20-CV-01007-LHR-BAM

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    <u>INTRODUCTION</u>**

The Parties have agreed to the proposed Settlement to fully resolve this putative class action lawsuit (the "Action"), brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, for total relief of $4,300,000.  Based on the substantial relief provided by the Settlement and the risks of continued litigation, Plaintiffs and Class Counsel believe the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class and warrants preliminary approval.

Plaintiffs and Class Counsel have vigorously pursued relief on behalf of the Plan, and Defendant's Counsel have vigorously defended against Plaintiffs' allegations.  The Parties agreed to the Settlement after extensive motion practice, discovery, and arm's-length negotiations by experienced counsel, including after a private mediation session with an experienced and highly respected neutral mediator.  Resolving the Action at this juncture allows the Parties to avoid continued and costly litigation that would deplete resources which could otherwise be used for the resolution of the Action, and which could result in a recovery less than that provided by the Settlement, or no recovery at all.

As set forth below, all prerequisites for preliminary approval of the Settlement and certification of the Settlement Class are satisfied.  As such, Plaintiffs respectfully submit that the Motion should be granted, and notice should be provided to the Settlement Class in accordance with the proposed Notice Plan.

**II.    <u>BACKGROUND</u>**

Plaintiffs allege that Defendant and its appointees are fiduciaries of the Plan and breached duties owed to the Plan and its participants and beneficiaries by: (1) failing to appropriately monitor the Plan's investments and, consequently, retaining unsuitable investments instead of readily available suitable alternative investments; (2) causing unreasonable recordkeeping and administrative fees to be charged to Plan participants. *See* Amended Consolidated Complaint ("Complaint") (ECF No. 26), ¶ 6.  Plaintiffs' allegations are set forth in full in the Complaint, which

Plaintiffs filed on November 11, 2020.  Defendant moved to dismiss the Complaint on January 8, 2021 (ECF No. 29).  On February 9, 2023, the Court issued its Memorandum and Order (ECF No. 89) denying Defendant's Motion to Dismiss and granting Defendant's Motion to Strike Plaintiffs' jury demand.  The Parties proceeded to conduct class certification discovery pursuant to the Court's Preliminary Scheduling Order (ECF No. 100).  Subsequently, on January 26, 2024, the Parties stipulated to certification of the following Class to pursue the claims set forth in the Complaint (ECF No. 26): all participants and beneficiaries in the Sutter Health 403(b) Savings Plan at any time from July 21, 2014 to the present (the "Class Period") (ECF No. 110).  The Court approved the Parties' stipulation and certified the Class on January 26, 2024 (ECF No. 112).  The Parties then engaged in substantial fact discovery efforts, including written discovery requests, voluminous document productions, depositions, and third-party discovery before the September 28, 2024 deadline for fact discovery set by the Court's Further Scheduling Conference Order (ECF No. 117).

On August 26, 2024, the Parties submitted a Joint Stipulated Request to Modify the Scheduling Order (ECF No. 135) based on their agreement to participate in a mediation on December 12, 2024.  In preparation for this mediation, the Parties communicated their positions regarding the merits of Plaintiffs' claims and Defendant's defenses, and the potential associated damages.  The Parties held the December 12, 2024 mediation session with Robert A. Meyer, Esquire, of JAMS, a well-respected, neutral mediator who is experienced in mediating claims of the kind at issue in the Action.  The Parties exchanged mediation briefs and follow-up information prior to and during the mediation and reached an agreement in principle to resolve the Action.

The Settlement provides that, in exchange for dismissal of the Action and a release of claims, Defendant will pay the aggregate amount of $4,300,000 into a Qualified Settlement Fund to be allocated to Current Participants, Former Participants, Beneficiaries, and Alternate Payees of the Plan pursuant to the Plan of Allocation.  *See* Settlement Agreement, §§ 1.26, 4.4–4.5, 5.2–5.6; Berin Decl., Ex. B.  The Settlement Agreement and the proposed Preliminary Approval Order set forth the Notice Plan and described Plaintiffs' anticipated requests for payment of attorneys' fees and litigation expenses to Class Counsel for case contribution awards, all of which are subject to the

Court's approval.  *See* Settlement Agreement, §§ 1.4, 1.8, 5.2.1–5.2.2, 6.1; Berin Decl., Ex. A.  In addition, the Settlement Agreement provides for the approval of the Settlement and related applications by an Independent Fiduciary on behalf of the Plan.  *See* Settlement Agreement, § 2.1.  Following the agreement in principle, the Parties worked to formally document their agreement in the Settlement Agreement.  The Parties filed a Notice of Settlement and Joint Motion to Vacate Current Deadlines and for Leave to File Motion for Preliminary Approval on December 20, 2024 (ECF No. 143) and a Joint Motion to Extend the Deadline to File Motion for Preliminary Approval on February 12, 2025 (ECF No. 144).  On February 14, 2025, the Court granted these Motions and extended the deadline for Plaintiffs to file a motion for preliminary approval of the proposed Settlement to March 13, 2025 (ECF No. 145).

## III.    THE PROPOSED SETTLEMENT

### A.    Class Definition

The Settlement Class is defined as:

> All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period.

> The Class Period is July 21, 2014 through the date the Preliminary Order is entered by the Court, and excluded from the Settlement Class are Defendant, the Defined Contribution Oversight Committee, the Board of Directors of Sutter Health (the "Board"), the individual members of the Defined Contribution Oversight Committee and the Board and their Beneficiaries.

*See* Settlement Agreement, § 1.46; Berin Decl., Ex. A.  The definition of the Settlement Class is materially identical to the Class that the Court previously certified on January 26, 2024 (ECF No. 112).  The minor changes establish an "end date" for the Class as of the date of the Preliminary Approval Order and expand the language to include "Alternate Payee[s]."  *Id.*  Maintenance of the Class will facilitate the administration of the Settlement.

### B.    Released Claims

 If the Court grants Final Approval of the Settlement, the Settlement Class will be deemed to have released Defendant from all claims as described in Section 1.38 of the Settlement Agreement,

which is incorporated herein by reference.  *See* Settlement Agreement, § 1.38.  These claims include the claims in the operative Complaint and potential claims arising out of record keeping and other administrative fees associated with the Plan, which arise out of the same conduct as the claims pled in the Complaint, with the exception of (a) any claims that the Class Representatives or the Settlement Class have to the value of their respective vested account balances under the terms of the Plan and according to the Plan's records as of the date the Settlement becomes Final; or (b) any ERISA claim(s) alleging mismanagement or misuse of the Plan's forfeited assets.  In recognition of the fact that this case was actively and extensively litigated with fulsome discovery regarding Defendant's acts and omissions with respect to the Plan, the claims released as part of the Settlement as set forth in Section 1.38 of the Settlement Agreement are, in essence, any actual or potential claims that were or could have been asserted in the Action related to the conduct alleged in the Complaint, as well as the conduct of the Independent Fiduciary in reviewing the Settlement.

### C.    Class Relief

#### 1.    Settlement Fund

Defendant has agreed to pay a Settlement Amount of $4,300,000 to resolve Plaintiffs' claims. Plaintiffs and Class Counsel, which has substantial experience litigating ERISA cases, view the settlement amount as fair, reasonable, and adequate.  *See* Berin Decl. ¶ 12.  The Settlement Amount compares favorably with settlements in other similar ERISA actions and represents a fair and reasonable compromise of Plaintiffs' disputed claims.  *Id.* ¶¶ 12–14.  The anticipated requests for Attorneys' Fees, Litigation Expenses, and Case Contribution Award to Plaintiffs are likewise fair and reasonable based on the efforts undertaken by Plaintiffs and Class Counsel and other relevant factors, and such requests are consistent with requests in analogous ERISA cases.  *Id.* ¶ 16.

The Settlement Fund will be used to pay the following amounts associated with the Settlement: (1) compensation to current and authorized former participants of the Plan as described in Section 5.2.4 of the Agreement; (2) all claims for attorneys' fees and expenses approved by the Court; (3) all costs arising from evaluation of the settlement by the Independent Fiduciary as described in Section 5.1.3 of the Agreement; (4) approved costs necessary to administer the

Settlement, including, among other things, payment for the services of the Settlement Administrator and any related taxes and tax-related costs;[3] and (5) payment of Case Contribution Awards to Plaintiffs not to exceed $12,500 each, subject to Court approval. *See* Berin Decl. ¶ 2, at Exhibit 1-A, § 5.

### 2. Distribution of Settlement Funds to Class Members

The amount paid to each Settlement Class member will be determined by the proposed Plan of Allocation, which determines a Settlement Class member's entitlement to Settlement proceeds on a *pro rata* basis considering the assets in each Settlement Class member's account during the relevant period. *See* Berin Decl. ¶ 2, at Exhibit 1-B. Participants, and Beneficiaries and Alternate Payees do not need to do anything affirmatively to receive payment under the Settlement, as their accounts will automatically be credited the amount due to them under the Settlement. As for Former Participants, Beneficiaries, and Alternate Payees who no longer have Active Accounts, these individuals need only submit a brief Former Participant Claim Form to be eligible for payment under the Settlement, which, at their election, will be made either by check or rollover to an individual retirement account or other eligible employer plan. *See* Berin Decl. ¶ 2, at Exhibit 1-B.

### 3. Payment of Case Contribution Awards

At Final Approval, Plaintiffs intend to ask the Court to approve Case Contribution Awards of up to $12,500 to be paid out of the Settlement Fund to compensate Plaintiffs for their time and efforts serving as class representatives, subject to the approval of the Court. Berin Decl. ¶¶ 16–17. Plaintiffs have actively participated in the litigation and assisted Class Counsel in drafting the respective complaints and other documents, consulted with Class Counsel as needed, answered discovery related requests for information, sat for depositions, and participated in settlement and strategy discussions. *Id.* Consistent with awards regularly granted under similar circumstances, Plaintiffs should be compensated for their work done in support of the litigation and for assisting Class Counsel in achieving a strong settlement on behalf of the Class, as well as the reputational and

---

[3] Any payment to the Plan's recordkeeper in connection with the allocation and distribution of Settlement proceeds will not be paid from the Settlement Fund.

1    other risks they undertook in bringing this Action.  Settlement Agreement, § 5.

2               4.     Payment of Attorneys' Fees, Costs, and Expenses

3            At Final Approval, Plaintiffs anticipate seeking an award of attorneys' fees for Class Counsel

4    of up to one-third of the common fund established by the Settlement, plus all reasonable and

5    necessary expenses advanced by Class Counsel and carried for the duration of the litigation, subject

6    to the Approval of the Court.  Class Counsel prosecuted the Class Action on a contingent basis and

7    advanced all associated costs with no expectation of recovery in the event the litigation did not result

8    in a recovery for the Settlement Class.  *See* Berin Decl. ¶ 16.  In connection with their application at

9    final approval, Class Counsel will submit information on their accumulated lodestar to enable the

10   Court to assess the reasonableness of the request.  Nonetheless, at this stage, the request is consistent

11   with attorneys' fees awards in similar cases.  *See Kelly v. Johns Hopkins Univ.*, 2020 WL 4334473,

12   at *3 (D. Md. Jan. 28, 2020) (collecting cases) ("In similar ERISA excessive fee cases . . . district

13   courts have consistently recognized that a one-third fee is the market rate.").

14              5.     Any Uncashed Checks Will Be Distributed to the Settlement Fund

15           All checks issued pursuant to this Plan of Allocation shall expire one hundred eighty (180)

16   calendar days after their issue date.  All checks that are undelivered or are not cashed before their

17   expiration date shall revert to the Settlement Fund to be utilized to benefit Plan participants as set

18   forth in the Plan of Allocation. *See* Berin Decl. ¶ 2, at Exhibit B, Section 1.13.  There shall be no

19   reversion to Defendant.

20          **D.**    **Approval of Settlement Terms by Independent Fiduciary**

21           As an additional means of confirming the fairness, reasonableness, and adequacy of the

22   Settlement, and to facilitate the Plan's release of claims under the Department of Labor's regulations

23   pertaining to prohibited transactions, pursuant to the Settlement Agreement, Defendant shall retain

24   an Independent Fiduciary to approve and authorize the Settlement on behalf of the Plan and Class

25   Members.  Settlement Agreement, § 2.1.  Defendant, Defendant's Counsel, Plaintiffs, and Class

26   Counsel shall provide the Independent Fiduciary with sufficient information so that the Independent

27   Fiduciary can review and evaluate the Settlement and each of the related applications.  *Id*.  The

28   PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
     1:20-CV-01007-LHR-BAM

Independent Fiduciary's review will include interviews with Class Counsel and Defendant's Counsel, respectively, and a review of confidential information exchanged in connection with the mediation process. Furthermore, the Independent Fiduciary shall comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39"), in making its determination, for the purpose of Defendant's reliance on PTE 2003-39. *Id.*

### E. Settlement Administration

The Settlement Administrator, whom Class Counsel selected and the Parties have agreed upon, shall be Strategic Claims Services ("SCS"), a settlement administrator with over 20 years of experience administering class action settlements. *See* Berin Decl. ¶¶ 6–7. Class Counsel has worked with SCS on a number of other ERISA, securities, and other class action cases over the past ten years.

SCS has successfully administered a number of complex ERISA class action settlements in an efficient and effective manner, including class settlements of similar ERISA claims, its projected expense is in line with those settlements and, unlike some of its competitors in Class Counsel's experience, SCS consistently stays within its proposed budget. *Id.* ¶¶ 6–7; *see e.g., Blackmon v. Zachary Holdings, Inc.*, 2022 WL 2866411, at *1 (W.D. Tex. July 21, 2022) (approving appointment of SCS to administer settlement of similar ERISA claims); *Jones v. Coca-Cola Consolidated, Inc.*, 2022 WL 703605, at *4 (W.D.N.C. Mar. 8, 2022) (same). SCS also has robust procedures for handling class member data and sufficient insurance coverage. Berin Decl. ¶ 6. Accordingly, based upon Class Counsel's experience working with SCS in similar cases, Class Counsel is confident that SCS will perform its work in an efficient, secure, and cost-effective manner, while ensuring a high claims rate among Class Members. *Id.* ¶ 7.

The Settlement Administrator shall administer the Settlement subject to the supervision of Class Counsel, Defendant's Counsel, and the Court as circumstances may require. Berin Decl. ¶ 3. The Settlement Administrator will be responsible for providing Notice to the Class, as described

1  below, and for maintaining the Settlement Website providing information regarding the Settlement

2  as well as a toll-free telephone number via which Class Members can direct questions about the

3  Settlement.  Settlement Agreement, § 2.4, 13.2.  The complete responsibilities of the Settlement

4  Administrator are detailed in the Settlement Agreement.

5       **F.   Dissemination of Notice to the Class**

6           Within 30 days of the entry of the Preliminary Approval Order, or as may otherwise be

7  determined by the Court, the Settlement Administrator shall provide Notice of the Settlement to

8  Class Members by electronic mail (if available) or first-class mail.  Settlement Agreement, § 2.2.

9  The Notice shall include Class Counsel's contact information and the Settlement Website

10 information, which will list key deadlines and links to the Notice, Former Participant Claim Form,

11 the Preliminary Approval Order, motions for preliminary approval, final approval, and applications

12 for attorneys' fees, expenses, and case contribution awards, the SAC, and other important documents

13 in the case.  Berin Decl. ¶ 2, at Exhibit 1, Exhibit A.  In addition, the Notice will include instructions

14 on how to access the case docket via PACER or in person at any of the court's locations, the date

15 and time of the final approval hearing, and a note advising Class Members that the hearing date may

16 change without further notice to the Class and instructions to check the settlement website or the

17 Court's PACER site to confirm that the date has not changed. *See id.*

18          Defendant shall use all reasonable efforts to provide necessary information to the Settlement

19 Administrator so that it may effectuate Notice, implement the Plan of Allocation, and distribute the

20 Settlement Funds.  Settlement Agreement, § 2.3.  The Settlement Administrator shall update mailing

21 addresses through the National Change of Address database before mailing (with all returned mail

22 skip-traced and promptly re-mailed).   *Id.*, § 2.4.   The Settlement Administrator shall use

23 commercially reasonable efforts to locate any Class Member whose Notice is returned and re-mail

24 such Notice one additional time if an updated location is identified.  *Id.*  As many Class Members

25 are expected to have Active Accounts, a significant number of Settlement Class members will be

26 easily reached through their contact information associated with those accounts, while Class

27 Members without Active Accounts should be reachable through the forwarding information

28
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
1:20-CV-01007-LHR-BAM

1 provided to the Plan's recordkeeper when their accounts were closed.

2 No later than 10 calendar days after the filing of the motion for preliminary approval of the

3 Settlement, Defendant will serve the Class Action Fairness Act Notice on the Attorney General of

4 the United States and the attorneys general of all states in which Class Members reside, as specified

5 by 28 U.S.C. § 1715. *Id*., § 2.5; and Berin Decl. ¶ 2, Exhibit 1, Exhibit E. The Settlement

6 Administrator also shall establish a toll-free telephone number to which Class Members can direct

7 questions about the Settlement. Berin Decl. ¶ 2, at Exhibit 1, Exhibit A.

8 **G.    Opportunity to Object**

9 Class Members shall have the opportunity to be heard regarding the Settlement and/or

10 Plaintiffs' forthcoming Motion for Awards of Attorneys' Fees, Litigation Expenses, and Case

11 Contribution Awards. The Class Notice provides instructions and requirements for Class Members

12 to object to the Settlement. *Id*., at § 2.2.8; Berin Decl. ¶ 2, at Exhibit A. Class Members shall have

13 until 30 days before the Fairness Hearing to file written objections and any supporting papers, which

14 will be held no earlier than 140 days after the entry of the Preliminary Approval Order. *Id*.

15 **IV.    ARGUMENT**

16 Under Federal Rule of Civil Procedure 23, when the Court is presented with a proposed

17 settlement, it must determine whether the proposed settlement class satisfies the requirements for

18 class certification under Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997).

19 Class certification under Rule 23 has two primary components: a proposed class must meet the four

20 requirements of Rule 23(a) and the requirements of at least one subsection of Rule 23(b). *See id*.;

21 Fed. R. Civ. P. 23; *see also Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019–1022 (9th Cir. 1998).

22 Approval of a settlement under Rule 23 involves "a two-step process": "First, the Court

23 decides whether the class action settlement deserves preliminary approval. Second, after notice is

24 given to class members, the Court determines whether final approval is warranted." *Mondrian v.*

25 *Trius Trucking, Inc*., 2022 WL 2306963, at *4 (E.D. Cal. June 27, 2022) (internal citation omitted).

26 In addition, the Court must preliminarily determine whether the Settlement is fair,

27 reasonable, and adequate. "At the preliminary approval stage, the district court must 'carefully

28

consider 'whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness[.]'" *Kabasele v. Ulta Salon, Cosms. & Fragrance, Inc.*, 2023 WL 2918679, at *2 (E.D. Cal. Apr. 12, 2023) (quoting *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)).   At this stage, the court "will only 'determine [] whether a proposed class action settlement deserves preliminary approval' and lay the ground work for a future fairness hearing." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 659 (E.D. Cal. 2008) (citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)).

### A.   The Court Will Be Able to Certify the Class for Purposes of Settlement

While ERISA representative actions are ideally suited for class action treatment, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]"  *Amchem*, 521 U.S. at 620.  In any event, the class action device is the prevailing procedural vehicle by which retirement plan participants bring representative actions under ERISA § 502(a)(2), and courts routinely grant certification of ERISA breach of fiduciary duty actions.  Additionally, the Court "generally requires consideration of "whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys." *Kabasele,* 2023 WL 2918679, at *2.  The Court has already certified a litigation class in this Action.  For the same reasons that supported the Court's prior certification of the litigation class, certification of the Settlement Class is appropriate.[4]

#### 1.    The Settlement Class Satisfies Rule 23 (a)

##### a.    Numerosity

The numerosity requirement of Rule 23 requires that a putative class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  However, "[i]mpracticability is not impossibility, and instead refers only to the 'difficult or inconvenience of joining all members

---

[4]The Settlement Class is materially identical to the previously-certified litigation class.

of the class.'" *Foster v. Adams & Assocs., Inc.* 2019 WL 4305538, at *3 (N.D. Cal. Sept. 11, 2019) (finding that this factor was "easily satisfied" with 2,766 vested plan participants) (citing *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913-14 (9th Cir. 1964)).  While no specific number is needed to maintain a class action, courts in this Circuit have routinely found that a class greater than 40 often satisfies the requirement, let alone with thousands of putative class members.  *See e.g.*, *Ogbuehi v. Comcast of California/Colorado/Fla./Oregon, Inc.*, 303 F.R.D. 337, 345 (E.D. Cal. 2014).  Here, Class Counsel estimates based on the Plan's publicly-filed Form 5500s (of which the Court can take judicial notice) that there are approximately 73,000 Settlement Class members, based on the number of accounts in the Plan during the Class Period.  *See* Berin Decl. ¶ 6; *see also Alberto* 252 F.R.D. at *660 ("Although plaintiff has not provided the court with any form of official documentation supporting this approximation, a court may rely on common sense assumptions to support findings of numerosity.") (collecting cases).  Thus, the proposed Class easily meets Rule 23(a)'s numerosity requirements.

### b. Commonality

The commonality prerequisite of Rule 23 requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).[5]  Commonality involves "the capacity of a class[-]wide proceeding to generate common answers apt to drive resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted).  This occurs when there is at least one common question, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id*.  Courts in this Circuit find "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to meet the commonality requirement], as is a common core of salient facts coupled with disparate legal remedies within the class."  *See Alberto*, 252 F.R.D. at *652 (citations omitted).  Ultimately, commonality only asks the court to look

---

[5] "The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting also that these requirements often merge with adequacy of representation).  While this memorandum discusses the requirements separately, the discussions of each element are related and arguments supporting one requirement frequently support the others.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
1:20-CV-01007-LHR-BAM

14

"for some shared legal issue or common core of facts" and "requires the plaintiff to demonstrate the class members have suffered the same injury." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012)).

Plaintiffs claim Defendant breached fiduciary duties owed to the Plan under ERISA § 404, 29 U.S.C. § 1104, and brought the Action in a representative capacity under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2). Thus, Plaintiffs' Plan-wide claims involve legal and factual questions that inherently affect all participants and beneficiaries in the Plan. Indeed, Plaintiffs' "br[ought] suit on behalf of participants in the Plan [], the centralized administration of which is common to all class members." *Cunningham v. Cornell Univ.*, 2019 WL 275827, at *5 (S.D.N.Y Jan. 22, 2019). "Because the fiduciary duties are owed to the [Plan] . . . common questions of law and fact are central to the case." *Id.; see* 29 U.S.C. § 1104(a)(1) ("a fiduciary shall discharge his duties with respect to a plan") (emphasis added).

The core questions in this Action are common to all Plan participants and include, *inter alia*: (i) whether Defendant breached their fiduciary duties by maintaining the challenged investments in the Plan and allowing unreasonable recordkeeping and administrative fees to be charged to Plan participants; (ii) whether the Plan suffered resulting losses; (iii) the manner in which to calculate the Plan's losses; and (iv) what equitable relief, if any, is appropriate in light of these alleged breaches. *See Aguilar v. Melkonian Enterprises, Inc.,* 2007 WL 201180, at *3 (E.D. Cal. Jan. 24, 2007) (finding commonality where injury stemmed from whether defendants breached their fiduciary duties to the Plan by making imprudent investment decisions); *see also Clark v. Duke Univ.*, 2018 WL 1801946, at *5 (M.D.N.C. Apr. 13, 2018). While a single common question is sufficient to meet this standard, the common questions here are numerous. *See Wal-Mart*, 564 U.S. at 359. Here, as in *Aguilar* and *Clark*, Plaintiffs' claims and each Class member's claims are based on the same events and legal theory, *i.e.*, breaches of fiduciary duty stemming from the Defendant's alleged disloyal and imprudent process for selecting, administering, and monitoring the Plan's investments and recordkeeping and administrative fees, along with the Plaintiffs' remedial theory, which is identical for the named Plaintiffs and the Class members. *See Aguilar,* 2007 WL 201180, at *4;

*Clark*, 2018 WL 1801946, at *5.    Since the central allegations here concern Defendant's administration of the Plan, they are common to all Plan participants who are empowered to bring an action on behalf of the Plan.  *See Aguilar,* 2007 WL 201180, at *4.

c.  Typicality

The typicality prerequisite of Rule 23 requires that the claims of the representative plaintiffs be typical of the claims of the class.  *See* Fed. R. Civ. P. 23(a)(3).  Typicality is met when "other members have the same or similar injury, . . . the action is based on conduct which is not unique to the named plaintiffs, and . . . other class members have been injured by the same course of conduct." *See Achziger v. IDS Prop. Cas. Ins. Co.*, 772 F. App'x 416, 417 (9th Cir. 2019) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (internal quotation marks omitted)).  "Under Rule 23(a)(3), it is not necessary that all class members suffer the same injury as the class representative."  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007) (citation omitted).  *See also In re First Am. Corp. ERISA Litig.*, 263 F.R.D. 549, 556 (C.D. Cal. 2009) ("Like commonality, typicality is a permissive standard and the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff"); *see also Kanawi v. Bechtel Corp.*, 254 F.R.D. 102 at (N.D. Cal. 2008).  Since claims under ERISA § 502(a)(2) are inherently representative claims, any participant's claim is necessarily typical of the claims of the Class; this is because every participant is asserting the Plan's claim.  Indeed, Plaintiffs brought this Action on behalf of the Plan, such that "[a]ny recovery of lost benefits will go to the Plan and will be held, allocated, and ultimately distributed in accordance with the requirements of the Plan and ERISA." *Tatum v. R.J. Reynolds Tobacco Co*., 254 F.R.D. 59, 66 (M.D.N.C. 2008).

Courts routinely find a retirement plan participant's breach of fiduciary duty claim to be typical of the claims of all participants in such a plan.  *See Cunningham*, 2019 WL 275827, at *7 (typicality requirement met where plaintiffs "sufficiently alleged that the defendants' failure to manage the Plans affected all proposed members of the class); *Sacerdote v. New York Univ.*, 2018 WL 840364 at *3 (S.D.N.Y. Feb. 13, 2018) (noting that analysis of the typicality factor is similar to the commonality analysis and finding because "[e]ach named plaintiff is asserting a claim on behalf

of the Plans . . . [t]he adjudication of the breach of fiduciary duty claims will not turn on any individual class member's circumstance."); *Kanawi,* 254, F.R.D. at 110 (typicality met for fiduciary breach claims because "[n]one of the facts or legal claims are unique to the named Plaintiffs[]" since "[t]he complaint is based on allegations and recovery that address the Plan as a whole, not individual claimants").[6] The circumstances in this Action, in which Plaintiffs alleged fiduciary breaches arising out of Defendant's purported management and administration of the Plan, are no exception. Defendant's Plan-wide alleged conduct at issue in this Action, of employing a "disloyal and imprudent process for selecting, administering and monitoring the Plan's . . . investments," is of a kind routinely found to support determinations of typicality. *Clark*, 2018 WL 1801946 at *5. Likewise, the remedial theory asserted by Plaintiffs here is identical among all members of the proposed Class. *See id*. In sum, Plaintiffs' claims on behalf of the Plan are typical of all Class members' claims.

### d. Adequacy

Representative plaintiffs must also show that they will "fairly and adequately protect the interests of this class." Fed. R. Civ. P. 23(a)(4). This inquiry analyzes if "the named plaintiffs and their counsel have any conflicts of interest with other class members" and "will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class[.]" *Ontiveros v. Zamora*, 2014 WL 3057506, at *7 (E.D. Cal. July 7, 2014).

Plaintiffs' interests are tightly aligned with all other members of the proposed Class by virtue of the very nature of the claims that they bring. Plaintiffs, acting in a representative capacity, seek to enforce the duties that Defendant owed to the Plan and to recover the damages and equitable relief due to them. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2); *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S 134, at 142 n.9 (1985). "There is no reason to doubt that the name[d] plaintiffs

---

[6]Since the commonality and typicality requirements "tend to merge," *Wal-Mart*, 564 U.S. at 349 n.5, Plaintiffs' claims are typical for many of the same reasons that commonality is satisfied. In short, because Defendant's actions were directed to and affected the Plan as a whole, without distinction among individual participants, the claims of all members of the proposed Settlement Class arise out of the same conduct. Likewise, Plaintiffs and all members of the proposed Settlement Class have the same claims under the same legal and remedial theory.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
1:20-CV-01007-LHR-BAM

17

will 'fairly and adequately protect the interests of the class,' as they have identical financial interests in this action as to the proposed class members." *Sacerdote*, 2018 WL 840364, at *4 (internal citation omitted) (quoting Fed. R. Civ. P. 23(a)(4)). "The general rule that there is 'a relatively low likelihood of intra-class conflicts in cases of excessive fee claims' because the recovery is to the Plan, not to individual Plaintiffs, holds true here." *Beach v. JPMorgan Chase Bank, N.A.*, 2019 WL 2428631, at *8 (S.D.N.Y. June 11, 2019) (quoting *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 164 (S.D.N.Y. 2017)); *see also Kanawi*, 254 F.R.D. at 111. Since Plaintiffs are pursuing claims on behalf of the Plan, there are no conflicts between Plaintiffs' individual interests and the interests of the proposed Settlement Class. Indeed, Plaintiffs and Settlement Class members all share the same objectives, the same factual and legal positions, and the same interest in establishing Defendant's liability. *See Aguilar*, 2007 WL 201180, at *4; *see also Moreno v. Deutsche Bank Ams. Holding Corp*, 2017 WL 3868803, at *7 (Sept. 5, 2017); *West v. Continental Automotive, Inc.*, 2017 WL 2470633, at *2 (W.D.N.C. June 7, 2017) ("[T]here is no evidence of a direct conflict of interests between named Plaintiffs and the class they seek to represent.").

A class representative needs only a basic understanding of the claims and a willingness to participate in the case—requirements that Plaintiffs here easily surpass. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966). Plaintiffs have demonstrated their commitment to pursuing this Action on behalf of a Settlement Class and have achieved a very favorable result, which does not favor any member of the Settlement Class at the expense of others. *See Berin Decl.*, ¶ 3. Plaintiffs clearly have, and will continue to, adequately represent all members of the Settlement Class. In addition, Plaintiffs have retained qualified and competent counsel, whose adequacy is discussed in greater detail below. *See Aguilar*, 2007 WL 201180, at *4 (finding that the adequacy requirement was satisfied by counsel who was "experienced in the field of ERISA class action litigation"); *see also Bailey v. Verso Corp.*, 337 F.R.D. 500, 507 (S.D. Ohio 2021) (finding that the adequacy requirement satisfied by class counsel who were "experienced ERISA litigators" and had "administered the settlement of numerous retiree-benefit class actions").

2.  The Settlement Class Satisfies Rule 23(b)(1)

In addition to satisfying the requirements of Rule 23(a), Plaintiffs need only satisfy one subsection of Rule 23(b). *See Amchem*, 521 U.S. at 613–14. Courts routinely grant certification under Rule 23(b)(1) in ERISA fiduciary breach cases. *See Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *11 (S.D. Ohio Feb. 18, 2021) (noting that cases involving allegations of fiduciary breaches to a trust or plan[] are precisely the type of cases that are encompassed by" Rule 23(b)(1); *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 833-34 (1999) (calling breach of trust actions a "classic example" of a Rule 23(b)(1) class); *Shirk v. Fifth Third Bancorp*, 2008 WL 4425535, at *4 (S.D. Ohio Sept. 30, 2008) ("courts have routinely found that class certification is appropriate under Rule 23(b), and most usually 23(b)(1)" in ERISA breach of fiduciary duty cases). Actions under ERISA §§ 409 and 502(a)(2) for breach of fiduciary duty present a "paradigmatic example" of a Rule 23(b)(1) class. *Kanawi*, 254 F.R.D. at 111–12 (citations omitted); *see also Foster*, 2019 WL 4305538, at *7 ("Certification under Rule 23(b)(1) is particularly appropriate in cases involving ERISA fiduciaries who must apply uniform standards to a large number of beneficiaries.") (citations omitted). Certification is appropriate under either subpart of Rule 23(b)(1). *See Clark*, 2018 WL 1801946, at *9–*10 (finding that plaintiffs established basis for certification under Rule 23(b)(1)(A) and Rule 23(b)(1)(B)); *see also Aguilar*, 2007 WL 201180 ("Here, either prong can be satisfied. Defendant's allegedly unlawful conduct applied to the Plans as a whole.")

### 3.  Miller Shah and Capozzi Adler Should Be Maintained as Class Counsel

In appointing Class Counsel, this Court should consider the Rule 23(g)(1)(A) factors:

> (i)    the work counsel has done in identifying or investigating potential claims in this action;
>
> (ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in this action;
>
> (iii)   counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Proposed Class Counsel, Miller Shah LLP and Capozzi Adler, P.C. (collectively, "Class Counsel"), are exceedingly qualified under these factors. *See* Berin Decl., ¶¶ 8–9. To date, Class Counsel have leveraged their experience and resources to vigorously pursue recovery on behalf of the Plan and protect the interests of all Class Members, including by comprehensively investigating the claims forming the basis if the Action, filing detailed pleadings, briefing several motions, and engaging in the discovery process. *Id.* ¶ 3. Class Counsel also have extensive experience litigating ERISA fiduciary breach cases and overseeing the administration of settlements in ERISA actions. *See id.* ¶¶ 8–9. Class Counsel will continue to leverage their wealth of relevant experience and resources on behalf of the Settlement Class through final resolution, including addressing inquiries from members of the Settlement Class and supervising the work of the Settlement Administrator. Accordingly, the Court should appoint Miller Shah LLP and Capozzi Adler, P.C. as Class Counsel.

**B.      The Settlement, Notice Plan, and Plan of Allocation Warrant Preliminary Approval**

**1.   The Settlement Should be Preliminarily Approved**

"At the preliminary approval stage, the district court must "carefully consider 'whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness[.]'" *Kabasele*, 2023 WL 2918679, at *2 (citing *Staton*, 327 F.3d at 952)). In determining whether a settlement meets these requirements, courts look to factors including the strength of the claims and defenses, the risk, expense, and complexity of continued litigation, the stage of proceedings and extent of discovery completed, and the experience and views of class counsel. *See id.* The relative importance of these factors depends upon the unique facts and circumstances of a given case, and "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness[.]" *Id.* (citations and alterations omitted). "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Campbell v. Facebook, Inc*., 951 F.3d 1106, 1121 (9th Cir. 2020) (same).

As a preliminary matter, although Plaintiffs believe there is strong legal and factual support for their claims, there is inherent risk in continued litigation of these complex ERISA claims. The Parties have engaged in significant motion practice, and additional dispositive and expert exclusion motions likely would have followed the Parties' engagement in expert discovery. Trial presentations would rely heavily on competing expert testimony and likely given way to a complex appeal. Berin Decl. ¶¶ 13–4. Accordingly, the Settlement is a product of an extensive arm's-length process in recognition of these risks. *See Rodriguez v. Danell Custom Harvesting*, *LLC*, 327 F.R.D. 375, 387 (E.D. Cal. 2018) ("In reality, the reasonable range of settlement is arrived at by considering the likelihood of a verdict for the plaintiff or defendant, "the potential recovery, and the chances of obtaining it, discounted to a present value."); *see also Ontiveros*, 2014 WL 3057506, at *14 (citing *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D.Cal. 2007); *see also Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013) ("[A]t this preliminary stage, it is evident that the Settlement is the product of arm's-length and informed negotiations, and appears to treat all class members fairly"). Further, Class Counsel and Defendant's counsel are experienced in ERISA litigation, and each possess a thorough understanding of the factual and legal issues involved in the Action. *Ontiveros*, 2014 WL 3057506, at *454, (citing *Hanlon*, 150 F.3d at 1026) ("Also weighing in favor of preliminary approval of the settlement is that Class Counsel is experienced in this type of litigation."). Class Counsel conducted substantial investigation and analysis of thousands of pages of documents. *See* Berin Decl. ¶¶ 3, 10. "Discovery can be both formal and informal" and, here, Plaintiffs and Class Counsel engaged in significant investigation of the Parties' claims and defenses even before filing the initial complaint, and since then have undertaken significant formal class certification and fact discovery. *See Rodriguez*, 327 F.R.D. at 387. Indeed, the Parties were engaged in vigorous litigation when they agreed to the Settlement and further litigation promised to be similarly lengthy and complex, involving numerous competing experts on liability issues concerning Plaintiffs' claims and Defendant's defenses as well as the Plan's alleged losses. Berin Decl. ¶ 14. As already discussed, the Parties likely would have filed dispositive motions and pretrial motions. Thus, Plaintiffs faced meaningful challenges in their ability to obtain

a recovery on behalf of the Plan, even setting aside the additional complexity and delay of likely appeals, which strongly supports the preliminary approval of the Settlement. *Id.*

Class Counsel has significant experience in class action litigation generally and ERISA breach of fiduciary duty litigation in particular, and are of the opinion that the Settlement is fair and reasonable. *Id.* ¶¶ 8–9, 11–12. "The Court is to accord great weight to the recommendation of counsel because they are aware of the facts of the litigation and in a better position than the court to produce a settlement that fairly reflects the parties' expected outcome in the litigation." *Rodriguez*, at 388 (citing *DIRECTV, Inc.*, 221 F.R.D. at 525). This presumption is especially warranted based on the opinion of "experienced plaintiffs' advocates and class action lawyers." *Does I v. Gap, Inc.*, 2002 WL 1000073, at *13 (D.N. Mar. Is. May 10, 2002); *Turk v. Gale/Triangle, Inc.*, 2017 WL 4181088, at *3 (E.D. Cal. Sept. 21, 2017) (holding that Class Counsel's opinion that the "Settlement Agreement is in the best interest of the Settlement Class Members" bears weight given "counsel's familiarity with this litigation and previous experience with cases.") (citing *West v. Circle K Stores, Inc.*, 2006 WL 8458679, at *5 (E.D. Cal. Oct. 20, 2006)); *see also Nat'l Rural Telecomms.*, 221 F.R.D. at *52. The Settlement provides a monetary recovery of $4,300,000, which is substantial in light of the range of realistic outcomes. Further, the Parties will submit the Settlement and related applications for fees and expenses to an independent fiduciary retained on behalf of the Plan, which will provide an opinion on the Settlement's reasonableness before the Fairness Hearing.

"Though Rule 23 does not explicitly provide for such a procedure, federal courts generally find preliminary approval of settlement and notice to the proposed class appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." *Singh v. Roadrunner Intermodal Servs., LLC*, 2018 WL 2412325, at *3 (E.D. Cal. May 29, 2018), *modified* 2018 WL 4382202 (E.D. Cal. Sept. 13, 2018) (citing *Lounibos v. Keypoint Gov't Solutions Inc.*, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014)); *Mathein v. Pier 1 Imports (U.S.), Inc.*, 2017 WL 6344447, at *3 (E.D. Cal. Dec. 12, 2017) (same).

In sum, the Settlement is the product of vigorous litigation and arm's-length negotiation by experienced and well-informed counsel, adequately reflects the strength of the parties' claims and defenses, is based on sufficient discovery and information, and provides relief to the Settlement Class.  Accordingly, the Court should find the Settlement is fair, reasonable, and adequate, and merits preliminary approval.

### 2.  The Notice Plan Should be Preliminarily Approved

In addition to preliminarily approving the proposed Settlement, the Court must approve the proposed means of notifying Settlement Class members.  *See* Fed. R. Civ. P. 23(e)(1).  Due process and Rule 23(e) do not require that each Class Member receive notice, but rather that class notice must be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afforded them an opportunity to present their objections."  *Mullane v. Central Hanover Bank and Trust Co*., 339 U.S. 306, 314 (1950).  "Individual notice must be provided to those class members who are identifiable through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).  "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchill Village, L.L.C. v. Gen. Elec*., 361 F.3d 566, 575 (9th Cir. 2004).

The Notice Plan is designed to reach the largest number of Settlement Class members possible.  The Settlement Notice will be sent by email and/or first-class mail to the last known address of each Settlement Class member prior to the Fairness Hearing.  *See Peters v. Nat'l R.R. Passenger Corp*., 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("It is beyond dispute that notice by first class mail ordinarily satisfies Rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances'").  Notably, all Settlement Class members had Plan accounts, so the Plan's recordkeeper has forwarding addresses and other identifying information for a substantial portion of the Settlement Class.  In addition, the Notice, Settlement Agreement, preliminary and final approval motions and related applications, and other litigation documents will be posted on the Settlement Website, and the Settlement Administrator will establish and monitor a toll-free number to field Settlement Class member inquiries.  The Notice will also provide Class

Counsel's contact information and include instructions on how to access the case docket via PACER or in person at any of the court's locations, the date and time of the final approval hearing, and a note advising Class Members that the hearing date may change without further notice to the Class and instructions to check the settlement website or the Court's PACER site to confirm that the date has not changed.

The Notice Plan satisfies all due process considerations and meets the requirements of Rule 23(e). The Notice Plan clearly describes: (i) the terms and operation of the Settlement; (ii) the nature and extent of the Released Claims; (iii) the maximum attorneys' fees, litigation expenses, and case contribution awards that may be sought; (iv) the procedure and timing for objections; and (v) subject to the Court's schedule, the date and location of the Fairness Hearing.

### 3. The Plan of Allocation Should Be Preliminarily Approved

The Plan of Allocation provides recovery to members of the Settlement Class on a *pro rata* basis, with no preferential treatment for the Class Representatives or any segment of the Settlement Class. A *pro rata* distribution based on each class member's loss relative to that of the class as whole "treats Class Members equitably and supports preliminary approval." *Razo v. AT&T Mobility Servs., LLC*, 2023 WL 3093845, at *17 (E.D. Cal. Apr. 26, 2023) (collecting cases). This is substantially similar to plans approved by other District Courts in analogous ERISA litigation in this state and around the country. *See, e.g.*, *Terraza v. Safeway Inc.*, No. 16-cv-03994-JST, Dkt. 268 (N.D. Cal. Sept. 8, 2020) ("Settlement Scores will be determined by calculating the Class Member's year-end asset amounts in the Plan during the Class Period . . . ."); *see also Barcenas v. Rush Univ. Medical Ctr.*, No. 22-cv-00366, Dkt. 73 (N.D. Ill. Jan. 19, 2023) (approving substantially similar pro rata plan of allocation in analogous ERISA breach of fiduciary duty action); *Karpik*, 2021 WL 757123, at *2 (approving a plan of allocation distributing the settlement fund on a pro rata basis). Additionally, other District courts have held that "[a] plan of allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *In re Nexus 6P Prods. Liab. Litig.*, 2019 WL 6622842, at *9 (N.D. Cal. Nov. 12, 2019) (citation omitted). Considering the equitable treatment of Class Members and the competence of Class Counsel, the

1 Court should find that the Plan of Allocation is also fair, reasonable, and adequate.

2 **V.    <u>CONCLUSION</u>**

3    Plaintiffs respectfully submit that the Court should preliminarily approve the Settlement,

4 Notice Plan, and Plan of Allocation, preliminarily certify the Settlement Class, and set a date for the

5 Fairness Hearing.  A proposed Preliminary Approval Order is attached to the contemporaneously-

6 filed Settlement Agreement.

7 Dated: March 13, 2025                Respectfully submitted,

8                        <u>/s/ *James C. Shah*      </u>
9                        James C. Shah
                         Ronald S. Kravitz
10                       MILLER SHAH LLP
                         155 Montgomery Street, Suite 600
11                       San Francisco, CA 94104
                         Telephone: (866) 540-5505
12                       Facsimile: (866) 3007367
13                       Email: jcshah@millershah.com
                                 rskravitz@millershah.com
14
15                       James E. Miller
                         Laurie Rubinow
16                       MILLER SHAH LLP
                         65 Main Street
17                       Chester, CT 06412
                         Telephone: (866) 540-5505
18                       Facsimile: (866) 300-7367
19                       Email: jemiller@millershah.com
                                 lrubinow@millershah.com
20
21                       Alec J. Berin
                         Christopher A. Miller
22                       MILLER SHAH LLP
                         1845 Walnut Street, Suite 806
23                       Philadelphia, PA 19103
                         Telephone: (866) 540-5505
24                       Facsimile: (866) 300-7367
                         Email: ajberin@millershah.com
25                               camiller@millershah.com

26

27

28 PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
   1:20-CV-01007-LHR-BAM

1

Donald R. Reavey
CAPOZZI ADLER, P.C.
2933 North Front Street
Harrisburg, PA 17110
Telephone: (717) 233-4101
Facsimile: (717) 233-4103
Email: donr@capozziadler.com

Mark K. Gyandoh
CAPOZZI ADLER P.C.
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile: (717) 233-4103
Email: markg@capozziadler.com

Daniel L. Germain
ROSMAN & GERMAIN LLP
16311 Ventura Blvd, Suite1200
Encino, CA 91436-2152
Telephone: (818) 788-0877
Facsimile: (818) 788-0885
Email: Germain@lalawyer.com

*Attorneys for Plaintiffs, the Plan,
and the Settlement Class*